586 F.2d 297
 18 Fair Empl.Prac.Cas. 1059, 17 Empl. Prac.
Dec. P 8547
Dr. James Albert CRAMER, Appellee,
v.
VIRGINIA COMMONWEALTH UNIVERSITY, the Board of Visitors VCU,
Warren W. Brandt, Former President, VCU, Individually and in
then official capacity, Wayne C. Hall, V. P., Academic
Affairs, VCU, Individually and in official capacity, Francis
J. Brooke, Provost, West Campus, VCU, Individually and in
official capacity, Paul D. Minton, Dean-School of Arts &
Sciences, VCU, Individually and Officially, John McGrath,
Chairman, Dept. of Sociology etc., VCU, Individually and
Officially, Lynn Nelson, Chairman Recruitment Comm., VCU, in
Official Capacity only, Appellants,
and
Wyndham B. Blanton, Jr., Member and Rector, Individually and
in official capacity, T. Edward Temple, President,
VCU, official capacity only, Defendants,
Equal Employment Advisory Council, American Civil Liberties
Union of Virginia, and Federation of Organizations for
Professional Women, & Anti-Defamation League of B'nai
B'rith, and United States of America, Committee on Academic
Non-Discrimination and Integrity, Amicus Curiae.
 No. 76-1937.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1977.
Decided Aug. 15, 1978.
 
 Walter H. Ryland, Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Va., William H. Hefty, Asst. Atty. Gen., Karen C. Kincannon, Sp. Asst. Atty. Gen., Richmond, Va., on brief), for appellants.
 W. H. C. Venable, Richmond, Va. (Cohen, Abeloff & Staples, Robert P. Geary, Richmond, Va., on brief), for appellee.
 Robert P. Dwoskin, Charlottesville, Va., on brief, for amicus curiae American Civil Liberties Union of Virginia.
 Christine B. Hickman, Washington, D.C., and Marcia D. Greenberger, Cincinnati, Ohio, Women's Rights Project Center for Law and Social Policy on brief, for amicus curiae Federation of Organizations for Professional Women.
 Arnold Forster, Jeffrey P. Sinensky, Joy Meyers, New York City, and Robert Morrill, San Francisco, Cal., on brief, for amicus curiae Anti-Defamation League of B'nai B'rith.
 Ronald M. Green, Washington, D.C., Alan M. Koral, Chicago, Ill., Vedder, Price, Kaufman, Kammholz & Day, Robert E. Williams and Douglas S. McDowell, Washington, D.C., on brief, for amicus curiae Equal Employment Advisory Council.
 William J. Kilberg, Sol., James D. Henry and Louis G. Ferrand, Jr., Attys. Dept. of Labor, J. Stanley Pottinger, Asst. Atty. Gen., Brian K. Landsberg, Frank D. Allen, Jr., Cynthia L. Attwood, Attys., Dept. of Justice, Washington, D.C., on brief, for amicus curiae United States.
 John W. Finley, Jr., Michael Blinick, Brashich & Finley, New York City, on brief, for amicus curiae Committee on Academic Non-Discrimination and Integrity.
 Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER and HALL, Circuit Judges, sitting en banc.
 PER CURIAM:
 
 
 1
 After an En banc hearing of this case involving alleged discrimination in employment on the basis of sex, we concluded to hold the case undecided pending a decision in the Supreme Court of the case of Regents of University of California v. Bakke, --- U.S. ----, 98 S.Ct. 2733, 57 L.Ed.2d 750. The Supreme Court's decision in Bakke came down late last month, but we have concluded that there is such doubt of the presence of an actual case or controversy that the case should be remanded to the district court for further inquiry before we undertake to answer the important legal questions.
 
 
 2
 The plaintiff is a white male with a doctorate in Sociology. During the academic year 1973-1974, he served in a temporary one-year appointment as an assistant professor in the Department of Sociology and Anthropology at Virginia Commonwealth University.
 
 
 3
 The case was tried on the basis of a stipulation in which it was agreed that during the year 1973-74, when it became known that two permanent positions in the Department would become vacant before the beginning of the next academic year, Cramer was invited to apply to the "Recruitment Committee" if he wished to be considered for one of the positions. He did apply, as did some three hundred eighty-four others, of whom fifty-seven were female.
 
 
 4
 According to the stipulation, the Department of Sociology and Anthropology "expressed to the Committee a preference to consider and hire qualified females and other minority groups before white males," though the stipulation says, perhaps with some inconsistency, that the Department head told the Committee that their obligation was to recommend hiring of the best qualified people. The stipulation then recites that applicants were divided into three categories. Female applicants were lumped in one group, minority males in another, and white males in a third. Only female applicants were interviewed for either position, and each position was filled by a qualified female. The stipulation then recites that Cramer's academic qualifications, as evidenced by his record and his publications, were equal to or better than those of at least one of the women hired to fill the two vacant positions. The stipulation does not say that no male was considered for either position, though the district court read it to mean that, and with possible justification, for in the University's brief in this court it is stated without qualification that no male was considered for either position.
 
 
 5
 It was on the basis of that stipulation that the district court held that there had been a violation of Title VII and of the Equal Protection Clause of the Fourteenth Amendment entitling Cramer to declarative and injunctive relief. Before the stipulation was agreed upon Cramer had abandoned all claims for reinstatement, back pay or damages. He sought only a declaration that the hiring practices revealed by the stipulation were unlawful and a general injunctive order requiring the University in the future to give equal consideration to males and females. He later reapplied for employment, and he contends the proceeding is not moot as to him, for, if he prevails, consideration of his application will not be prejudiced because of his sex.
 
 
 6
 In November 1976 an attorney in the Civil Rights Division of the Department of Justice, with the approval of counsel for the University, interviewed two members of the Recruitment Committee and the head of the Department. They produced a memorandum dated May 31, 1974 signed by all four members of the Recruitment Committee and addressed to the Dean of the School of Arts and Sciences.
 
 
 7
 Apparently because Cramer was then teaching in the University, according to the memorandum of May 31, 1974, he was considered for each of three positions before any outside applicant was interviewed. The availability of two positions had been widely advertised in the fall, but before the Recruitment Committee did its work, the availability of a third position became known. Each position required somewhat different qualifications, but the second, requiring a background in criminology, seemed to fit Cramer. Cramer, of course, was well known to the members of the Recruitment Committee, and there was no need to interview him. According to the 1974 memorandum, however, while the Committee considered him for each of the three positions, he was not rated high among the candidates for either. After rating him as not being high among the candidates, no member of the Committee requested a vote as to whether the Committee would recommend him, and later, when the Department was considering the Committee's recommendations, no member of the Department suggested departmental consideration of him.
 
 
 8
 According to the memorandum, after considering Cramer, the Committee interviewed four female applicants for the first position. For the second position they also interviewed three other women and one black male. In a meeting of the Committee on March 13, 1974, they considered for the second position those whom they had interviewed and four white males, including Cramer. The Committee chose one of the females interviewed for the first position to fill the second, though they agreed that if she should decline the offer the Committee would recommend one of the three high ranking white, male applicants. Cramer, the fourth white male considered, was not one of the three.
 
 
 9
 Later, two white males and one female were interviewed for the third position. The memorandum does not disclose who was selected for the third position, perhaps because the selection process for that position was not complete when the memorandum was written.
 
 
 10
 While it thus appears that a woman was selected for each of the first two positions, the memorandum is quite clear in its statement that careful consideration was given to Cramer's application before any outsider was invited to interview and that he was again considered with other applicants, including three other white men, when their attention was specifically focused on the second position.
 
 
 11
 While most of the statements in the stipulation are literally consistent with the memorandum, the inconsistencies are significant, and the additional information contained in the memorandum, if true, would materially alter the factual setting in which the legal questions are presented.
 
 
 12
 In its brief in this court, the University undertakes to defend a voluntary program of preference for females in employment, but if the contemporary memorandum in which the Committee reported what it had done reflects the truth, the legal question may not be present. Under the circumstances, we think the preferable course is to remand the case to the district court with instructions to open the record, receive testimony and make new findings of fact and conclusions of law based upon that testimony.
 
 
 13
 VACATED AND REMANDED.